UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
* * * * * * * * *

**JENNICA JOHNSON,**

Plaintiff,

Case No.

v,

Hon.

**COMSTOCK VILLAGE APARTMENTS, L.D.H.A.**

COMPLAINT AND JURY DEMAND

Defendants,

---

## COMPLAINT

**NOW COME** Plaintiff, Jennica Johnson, by her attorney, states as follows:

### PARTIES AND JURISDICTION

1. Plaintiff, Jennica Johnson, is a resident of Kalamazoo County, Michigan.

2. Defendant, Comstock Village Apartments, LDHA (hereinafter "Comstock Village"), is a limited partnership that regularly conducts business in Kalamazoo County, Michigan, and maintains a registered agent in Michigan.

3. This Court is subject matter jurisdiction rests on 28 U.S.C. §1331.

4. Supplemental jurisdiction over the state law claims here asserted rests on principles of ancillary and pendent jurisdiction, 28 U.S.C. §1367(a). The claims arise from a common nucleus of operative facts with the federal claim alleged herein and are so related to the federal claims as to form part of the same controversy under Article III of the U.S. Constitution.

5. Venue is proper in this district under 28 U.S.C. §1391 because the defendant resides in this district and because a substantial part of the events or omissions giving

rise to the plaintiff's claims occurred in this district.

## FACTS

6.     Jennica Johnson lived at Comstock Village for about 12 years.

7.     In 2015 Johnson's doctor recommended that she have an emotional support animal, and Comstock Village agreed to allow her to to get a dog.

8.     At some point in 2015 or early 2016, Johnson got a dog, and kept it in her townhome. On a couple of occasions, other tenants complained about the dog, and on September 20, 2016, Comstock Village gave Ms. Johnson a Notice to Quit, terminating her tenancy as of October 21, 2016.

9.     Along with the Notice, Comstock Village send a notice to Ms. Johnson, informing her that it would not evict her if she agreed to remove her dog by October 21st.

10.    On October 4, 2016, Comstock Village and Johnson entered into a agreement in which she agreed to remove the dog by October 21st.

11.    Johnson removed the dog on time, and gave it to a family member. However, Comstock Village claims that Johnson still had the dog in the apartment after October 21st.

12.    On October 28, 2016, Comstock VIllage filed a summons and complaint against Johnson, seeking to evict her for material violations of the lease. Legal Aid of Western Michigan Defended Ms. Johnson in that case.

13.    On October 27, 2016, Johnson filed a complaint or inquiry with the Michigan State Housing Development Authority (MSHDA) because of an electrical repair that Comstock Village had not made. MSHDA emailed an inquiry to Comstock Village on November 1, 2016, which went largely ignored by Comstock Village.

14. In early 2017, Johnson made a complaint to the Michigan Department of Civil Rights (MDCR) based on Comstock Village's attempt to evict her because of her emotional support animal.

15. The civil rights complaint and the eviction were resolved together. Johnson, Comstock Village, and entered into a Settlement Agreement and Title VI Voluntary Compliance Agreement (MSHDA Settlement), which was approved by MSHDA and HUD.

16. The MSHDA Settlement contained the following four specific provisions:

   a. That Johnson would vacate the apartment, and Comstock Village would dismiss the eviction with prejudice.

   b. That Comstock Village would provide "a factual and neutral letter of reference (dates or (sic) tenancy, amount of rent paid, and timeliness of rent payments) to the Fair Housing Center within 5 days of signing this agreement."

   c. That Comstock Village would remove all negative credit reports about Johnson, and would not cause any new negative credit reporting, "from the date [Johnson] began her tenancy with Respondent to the date this settlement agreement is signed by Respondent."

   d. Comstock Village also agreed that its property manager would attend fair housing training.

17. The MSHDA Settlement states that Comstock Village will not retaliate against Johnson in any way.

18. The MSHDA Settlement included a provision stating that Johnson would not sue Comstock Village regarding any matters pertaining to the complaint, "subject to performance by [Comstock Village] of the promises and representations contained herein."

19. The MDCR Complaint was signed by all parties by April 26, 2017.

20. Comstock Village and Johnson signed a Settlement Order in May 2017. A dismissal was entered on June 5, 2017.

21. In the spring of 2017, while the eviction case and MSHDA case were pending, Comstock Village requested at least one consumer credit report of Johnson.

22. At the time of the credit report, Johnson had no pending rental application with Comstock Village for an apartment unit.

23. Comstock Village had no current permission or authorization to obtain a credit report.

24. Comstock Village failed to provide the reference letter within 5 days of the Settlement Agreement. However, Johnson had applied for an apartment with Converse Management, and Comstock Village completed a 1-page reference letter for that application. Johnson's attorney drafted a reference letter based on that verification, which was ultimately signed by Ryan Wheeler, an agent of Comstock Village. Johnson used it as she applied for new housing.

25. Johnson moved out of her apartment in a timely manner, and gave Comstock Park a notice where it could send notices to.

26. On about June 5, 2017, Comstock Village sent Johnson a notice, claiming several damages to the premises, totaling $312.00 owed after the security deposit was accounted for.

27. The notice also included a sticker on the top that stated:

> **<u>Evicted</u>: Jennica Johnson's Dog posed a direct Threat to the health & safety of other tenants, And actually chased and attacked other tenants, Causing physical harm to minor child**

28. Johnson objected to the notice in a timely manner.

29. Comstock Village sent a letter dated June 15, 2017, to Johnson, providing further explanation of the security deposit disposition. However, Comstock Village has never filed a lawsuit against Johnson to determine whether it had the right to collect her security deposit, and it never returned the deposit.

30. Johnson received a collection letter from the Lansing Professional Business Bureau, Inc., seeking to recover $312 on behalf of Comstock Village. She sent a letter to Lansing, disputing the debt, but did not receive a response.

31. Johnson applied for housing throughout the summer and fall of 2017, but could not find housing.

32. When Johnson moved out of her apartment at the end of May 2017, she moved in with her grandfather in Three Rivers, Michigan. Johnson's children could not live with her there, so they had to stay with other family in Kalamazoo.

33. Johnson continued looking for housing in the summer and fall of 2017, using the reference letter that was provided by Comstock Village.

34. Johnson applied to a Remax property in August 2017. Johnson was denied housing from Remax based on information found in an AmRent credit report. Upon

information and belief, Comstock Village provided negative information about Johnson to the Remax property and/or AmRent after April 26, 2017.

35.    In the fall of 2017, Johnson applied for housing at Big Bend Apartments, using the reference letter provided by Comstock Village.

36.    On about November 15, 2017, Johnson received a call from the manager at Comstock Village. The manager claimed that Johnson had provided a falsified letter of reference to Big Bend Apartments. The manager threatened to call the police because of the letter.

37.    Johnson was denied housing from Big Bend Apartments based on information found in a credit report. Upon information and belief, Comstock Village provided negative information about Johnson to the Big Bend and/or credit reporting agencies after April 26, 2017.

38.    Johnson's application was also rejected by the Riverview Coop in November 2017, but the denial and was accepted there in December 2017.

39.    Comstock Village failed to perform its promises under the MSHDA Settlement, and Johnson therefore has the right to raise claims based on her complaint to MSHDA and HUD in 2017.

## COUNT I: Violation of 42 U.S.C. § 3604

40.    Paragraphs 1 through 40 of the Complaint are incorporated and restated as if set forth fully herein.

41.    Johnson at all relevant times was handicapped under the terms of the FHAA.

42.    Defendant was at all relevant times aware that Plaintiff Johnson was disabled under the terms of the FHAA.

43. Defendant has discriminated in the terms, conditions or privileges of the rental of a dwelling, in violation of 42 U.S.C. § 3604(f), by initiating an eviction against Johnson based on the claimed mis-behavior of her emotional support animal.

44. Defendant has also discriminated in the terms, conditions or privileges of the rental of a dwelling, in violation of 42 U.S.C. § 3604(f), by making derogatory statements relating to Johnson to third parties, including potential landlords.

45. As a result of Defendant's conduct, Johnson has been injured and is an aggrieved person as defined by 42 U.S.C. § 3602(i).

46. Wherefore, Plaintiff Johnson requests a judgment awarding Johnson damages arising from Defendant's conduct, awarding Johnson punitive damages, and awarding Plaintiff reasonable attorney's fees and costs.

## COUNT II: Violation of 42 U.S.C. § 3617

47. Paragraphs 1 through 47 of the Complaint are incorporated and restated as if set forth fully herein

48. Plaintiff Johnson asserted her rights under the FHAA by requesting a reasonable accommodation to Defendant's pet policy for her emotional support animal.

49. Johnson also asserted her rights under the FHAA by filing a complaint against Defendant with state and federal civil rights agencies.

50. Defendant coerced, intimidated, threatened, or interfered with Johnson on account of her having exercised her rights protected by the Fair Housing Act, in violation of 42 U.S.C. § 3617. Defendant's violations of § 3617 include, but are not limited to the following: filing an eviction against Johnson; wrongfully obtaining Johnson's consumer credit report for an impermissible purpose; communicating derogatory information

regarding Johnson to third parties, including credit reporting agencies and potential landlords; and threatening to call the police on Johnson's.

51. There is a causal connection between Johnson's protected activities and Defendant's decisions to take adverse action against her.

52. As a result of Defendant's conduct, Johnson has been injured and is an aggrieved person as defined by 42 U.S.C. § 3602(i).

53. Wherefore, Plaintiff Johnson requests a judgment awarding Johnson damages arising from Defendant's conduct, awarding Johnson punitive damages, and awarding Johnson reasonable attorney's fees and costs.

## COUNT III: Violation of the FCRA,

54. Paragraphs 1 through 54 of the Complaint are incorporated and restated as if set forth fully herein.

55. Upon information and belief, Defendant sought and obtained a "consumer report" from a "consumer reporting agency" within the meaning of those terms as defined at 15 U.S.C. § 1681a (d) & (f) in the spring of 2017.

56. Defendant had no purported purpose in obtaining the "consumer report."

57. The procurement of said "consumer report" was not for any of the permissible purposes enumerated in 15 U.S.C. § 1681b.

58. Defendant's conduct, including the obtaining of Plaintiff Johnson's credit consumer report, is in violation of the FHAA, in that, among other things, the real purpose in obtaining the report was to intimidate, harass, and/or otherwise interfere with the efforts and attempts of Johnson to redress and seek remedies for Defendant's intentional violation of the FHAA.

59. Defendant's conduct and violation of the FCRA has resulted in economic and non-economic injuries and damages to Johnson.

60. Additionally, because Defendants procured said "consumer report" in willful violation of the FCRA, Defendant is liable to Johnson for various statutory, exemplary and punitive damages.

### COUNT IV: Violation of the LTRA

61. Paragraphs 1 through 61 of the Complaint are incorporated and restated as if set forth fully herein.

62. Defendant charged Plaintiff Johnson a total of $294.00 as a security deposit as defined by the Landlord and Tenant Relationships Act (LTRA). See MCL 554.601.

63. Defendant has failed to commence an action for a money judgment within 45 days after termination of Johnson's occupancy, or return Johnson's Security Deposit, in violation of MCL 554.613.

64. Pursuant to MCL 554.613(2), Defendant is liable to Johnson for an amount equal to double her security deposit.

65. Wherefore, Johnson requests that this Court enter a judgment awarding her an amount equal to double her security deposit, together with any costs.

### Request for Relief

WHEREFORE, for all of the above reasons, Plaintiff Johnson respectfully requests that the Court grant the following relief against Defendant:

(A) Any affirmative relief as may be necessary to remedy Defendant's past discriminatory practices and decisions and to insure that Defendant does not discriminate on grounds of handicap or disability in the future;

(B)     Award actual and compensatory damages to compensate Plaintiff for her economic losses and damages, and non-economic injuries, such as physical pain and suffering, emotional distress, loss of civil rights, and humiliation and embarrassment caused by the actions of Defendant, in an amount to be proven at trial;

(C)     Grand Plaintiff an award of punitive and/or exemplary damages as a result of Defendant's deliberate, intentional, overt, willful and flagrant discrimination, in an amount that reflects the dual purposes of punishment and deterrence;

(D)     Grand Plaintiff an award of double her security deposit as statutory damages for Defendant's violation of the Landlord and Tenant Relationships Act;

(E)     Grand Plaintiff an award of attorney fees, costs, and pre-judgment and post-judgment interest incurred in bringing this action; and

(F)     Grand such other and additional relief that the Court finds just and appropriate under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted;

LEGAL AID OF WESTERN MICHIGAN

/s/ *John P. Smith*                                                    December 19, 2018
John P. Smith (P71368)
25 Division S. STE 300
Grand Rapids, MI  49503
(616) 608-8047
jsmith@legalaidwestmich.net
Attorneys for Plaintiff